IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN W. LEMON,

        Plaintiff,   CV-09-6099-ST

  v.   FINDINGS AND
                                                                     RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Steven W. Lemon ("Lemon"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-33 (2008). This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3). The

1 - FINDINGS AND RECOMMENDATION

Commissioner has filed a Motion to Remand (docket #18). For the reasons set forth below, that motion should be granted in part and denied in part, and the Commissioner's decision should be remanded for an immediate award of benefits.

## ADMINISTRATIVE HISTORY

Lemon protectively filed for SSI and DIB on April 26, 2006, alleging a disability onset date of October 15, 1991. Tr. 108-19, 130, 149.[1] The agency assigned August 31, 2005, as the alleged onset date. Tr. 145, 148, 251-52. Lemon's applications were denied initially and on reconsideration. Tr. 85-94, 99-104. On March 24, 2008, a hearing was held before Administrative Law Judge ("ALJ") Jean Kingrey. Tr. 19-67. The ALJ issued a decision on May 30, 2008, finding Lemon not disabled. Tr. 5-11. The Appeals Council denied Lemon's request for review on April 3, 2009 (Tr. 1-3), making the ALJ's decision the Commissioner's final decision.

## BACKGROUND

Lemon was born in 1969 and was 38 years old at the time of the hearing before the ALJ. Tr. 26, 108. He completed his GED and has past relevant work experience as a telemarketing salesman. Tr. 17, 26. He alleges that he is unable to work due to degenerative disc disease, chronic pain, internal hernia, and depression. Tr. 130.

### I. Claimant's Testimony

In his written testimony dated June 1, 2006, Lemon reported persistent, debilitating pain in his back, neck, and legs. Tr. 168. The pain never goes away, and is aggravated by anything other than laying flat on his back, despite taking several pain medications. Tr. 168-69. He needs

---

[1] Citations are to the page(s) indicated in the official transcript of record filed on July 20, 2009 (docket #11).

help with most personal care activities, including getting dressed, shaving, hair care, and getting up from the toilet and couch, or exiting a car. Tr. 161, 170. Lemon stated that he is unable to prepare food for himself, other than to put something in the microwave for a few minutes, cannot help with house or yard work, and can only help with the shopping if the store has electric scooters. Tr. 162-63, 170. He rarely leaves the house, often forgets appointments, and needs help getting in and out of vehicles and on or off scooters at the store. Tr. 164. He is limited in nearly all physical movement and cannot follow written or spoken instructions well because he loses concentration due to his pain. Tr. 165. Although not medically prescribed, he uses a wheelchair or electric scooters when available. Tr. 166.

At the hearing on March 24, 2008, Lemon testified that while working as a systems manager in 2003, he was permitted to use a cot to lay down for an hour at a time approximately three to four times a week due to back pain and his legs falling asleep. Tr. 30-32. His ability to work is limited by trouble standing, lifting, twisting, turning, bending, pushing, and pulling. Tr. 37. He testified that he is constantly tired and in a typical week could have three or more good days where he can work around the house, so long he does not get on or up from the ground. Tr. 39. His depression makes it hard for him to get along with people, and he often has a hard time remembering things like appointments and paperwork. Tr. 41. He often needs help getting dressed and is unable to sit and watch television with his children because his back pain is so severe. Tr. 44-45. He does not shop unless he can use an electric wheelchair because after walking, his legs start falling asleep and stiffen up, and he can barely walk. Tr. 45.

///

///

**II. Medical Records**

Lemon's medical records begin in August 1993, with a letter from Richard E. Matteri, M.D., noting that Lemon was experiencing "lumbar pain secondary to exposure in the work place," but that surgery was not necessary at that time. Tr. 205. There are no other records until June 28, 1999, when Stanley J. Ruff, M.D., released Lemon to work with a weight restriction pending hernia surgery. Tr. 206. On July 12, 1999, Dr. Ruff performed a successful hernia repair surgery. Tr. 207-08. After this, the record is sparse, with an August 12, 2002 note for an initial visit with David Greenberg, M.D., which relates Lemon's medical history, and a November 13, 2003 letter from a therapist describing Lemon's struggles with stress related to legal, financial, personal, and health problems. Tr. 209-10.

Lemon's medical records are more plentiful beginning with his initial visit to Steven E. Koester, M.D., on July 1, 2004. Tr. 285. At that time, Lemon reported chronic low back pain and insomnia and that he was taking medication for a "mental break" he experienced three months earlier. *Id*. Dr. Koester reviewed Lemon's records on July 29, 2004 and discussed his history, noting that x-rays taken that day showed a lesion at L4, but that the joint space was fairly well maintained. Tr. 284. At a follow-up visit on August 4, 2004, Dr. Koester noted for the first time that Lemon appeared to be in pain and moved slowly. *Id*. He stressed the importance of an MRI in order to better evaluate Lemon's complaints. *Id*. The MRI was conducted on August 25, 2004, and revealed degenerative disc disease at L3-L4 with no focal herniation. Tr. 282.

On September 7, 2004, Lemon reported low back pain and numbness in his right leg, exacerbated by a recent move. Tr. 281. Dr. Koester observed that Lemon moved slowly and had

limited range of motion, continued his medications and referred him to physical therapy. *Id*. In response to continued complaints of back pain, on October 4, 2004, Dr. Koester injected Lemon with Betamethasone and Dexmethasone which provided some relief. *Id*. On December 7, 2004, Lemon reported that he had been working less than half-time as a computer technician which caused him severe back pain and numbness in his legs. Tr. 280. Dr. Koester noted that while Lemon moved slowly with a limp, his back pain was out of proportion to the changes reflected in the most recent MRI. *Id*. In response to Lemon's request for a doctor's note attesting to his total disability, Dr. Koester noted that he was "reluctant to do this without some type of consultation." *Id*. Throughout 2005, Dr. Koester continued to adjust Lemon's medications and treat his back pain, frequently observing that Lemon moved slowly and walked partially stooped over with a profound limp. Tr. 274-79.

On February 9, 2006, Dr. Koester noted that "I [have] been following him for awhile now and it is my opinion that it is very unlikely he is able to perform any type of gainful employment secondary to chronic back pain." Tr. 273. In a physical RFC report dated the same day, he opined that Lemon could perform only sedentary work without any postural requirements. Tr. 212-13. He could only lift or carry less than 10 pounds occasionally, could stand/walk for less than two hours in an eight-hour day, could sit for less than six hours in an eight-hour day, must be permitted to alternate positions to relieve discomfort, and should never balance, stoop, kneel, crouch, crawl, or climb ladders, ropes, stairs, or scaffolds. *Id*. On March 9, 2006, Dr. Koester observed that Lemon was hobbling while walking and had limited range of motion in his back and suggested a neurologic consultation. Tr. 272.

On May 5, 2006, M. Foote interviewed Lemon for the Social Security Administration, noting that he got up several times during the interview, was hunched over, and said he had to move around due to back pain. Tr. 150. While seated, Lemon was breathing very heavily, and during the second half of the interview, he was crying and "actually had tears streaming down his face." *Id*.

On June 8, 2006, Michael Balm, M.D. performed an electrodiangostic study, the results of which were normal. Tr. 214-19. Dr. Balm noted that Lemon had "diffuse sensory symptoms" and that "unfortunately," he suspected that "long-term pain management for palliative care is the most likely course of action." Tr. 219.

On June 15, 2006, Dr. Koester discussed the results with Lemon, continued his medications, and noted that Lemon "certainly seems like he is not able to hold any kind of job." Tr. 268. On June 28, 2006, an x-ray of the lumbar spine revealed mild compression fracture of T12, moderate degenerative disc changes at T11-T12, and moderate degenerative disc changes at L3-L4, with "possible old or subacute fracture of the superior endplate anteriorly at L4. This is most likely chronic and might be due to an incompletely fused apophysis. A subacute fracture is possible." Tr. 223.

At the request of DDS, J. Scott Pritchard, D.O., completed a physical RFC assessment on June 30, 2006. Tr. 224-31. Dr. Pritchard concluded that Lemon could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk with normal breaks for at least two hours in an eight-hour workday, sit with normal breaks for about six hours in an eight-hour workday, and was unlimited in his ability to push/pull. Tr. 225. Lemon should never climb a ladder, rope, or scaffold, and should only occasionally stoop, kneel, crouch, crawl, or climb a ramp or stairs, and

should avoid concentrated exposure to hazards. Tr. 226-28. Dr. Pritchard found Lemon only "partially credible," given the objective medical findings and his activities of daily living. Tr. 229. Similarly, Dr. Pritchard gave Dr. Koester's February 2006 opinion "limited weight" because the objective medical evidence was not consistent with the limitations ascribed by Dr. Koester. Tr. 230. On December 7, 2006, reviewing physician Martin Kehrli, M.D., affirmed this assessment. Tr. 251.

On July 7, 2006, Dorothy J. Anderson, Ph.D, completed a Psychiatric Review Technique form, concluding that Lemon's depression was not a severe impairment because he had only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Tr. 232-45. On December 8, 2006, reviewing psychologist Paul Rethinger, Ph.D., affirmed that Lemon's psychological impairments remained non-severe. Tr. 252.

On July 31, 2006, Dr. Koester noted that in the two years of treatment, Lemon had "shown no improvement," leading him to conclude that Lemon could not be gainfully employed because he "can only work at the most sedentary job with frequent positional changes and would likely require frequent absences." Tr. 266. Dr. Koester acknowledged that Lemon's reported symptoms exceeded the objective findings, but that he seemed "truly incapable of gainful employment." *Id.* At that time, Dr. Koester wrote a prescription for use of a walking cane. Tr. 267.

On September 13, 2006, Dr. Koester noted that Lemon very slowly got up from a chair and leaned heavily on his cane. Tr. 323. Dr. Koester also observed Lemon in the parking lot getting into his vehicle, and noted that he was "still moving very slowly and appeared to be in

7 - FINDINGS AND RECOMMENDATION

pain and looked no different from his exam in the office." *Id.* On October 11, 2006, Dr. Koester noted that Lemon's use of a walker appeared to be helping, though he still experienced incapacitating pain with intermittent numbness and tingling. Tr. 322. For the remainder of 2006 and early 2007, Dr. Koester noted that Lemon appeared to be moving slowly, appeared to be in pain, and was more depressed, sometimes getting tearful when talking about his troubles. Tr. 316-21.

On April 26, 2007, Lemon reported to Dr. Koester that he was very limited in his activities and his hands became numb when he used the walker. Tr. 315. Dr. Koester prescribed a wheelchair for "better mobility." *Id.* During the physical exam, Dr. Koester heard "an obvious grating crepitation sound with any type of movement" and injected Lemon with Xlocaine and Marcaine to ease the discomfort. *Id.* Dr. Koester's notes from this visit reflect his opinion that Lemon was "disabled from work." *Id.* Lemon's back pain fluctuated during May and June 2007; sometimes he moaned in pain, and other times he seemed to move with more ease. Tr. 310-15.

On May 29, 2007, Lemon sought mental health counseling services for his depression, which had become overwhelming. Tr. 257-62. Lemon was assessed with major depressive disorder. Tr. 261. On August 29, 2007, Lemon began individual therapy with Irene Kulus, meeting with her approximately twice a month. Tr. 289-99. In the last record from Options Counseling Services dated December 10, 2007, Lemon reported no change in his levels of depression and self esteem. Tr. 289.

During the fall of 2007, Dr. Koester's notes focused primarily on Lemon's mental health, noting that he seemed sad, stressed, anxious and tearful. Tr. 307-09. On November 21, 2007, he

opined that Lemon's has "total and permanent disability from chronic degenerative disc disease in the lumbosacral spine."  Tr. 265.

In a letter addressed to Lemon's counsel, dated January 21, 2008, Dr. Koester opined that Lemon's "medica[l] conditions severely affect his ability to perform work-related physical activities" because he "would have extreme difficulty with any job requiring eight hours of working[,] [o]r significant standing, walking, lifting, bending or twisting."  Tr. 324.  Dr. Koester noted that diagnostic findings supported Lemon's decreased range of motion, pain, and generalized weakness, and that Lemon took medications that could impair his mental functioning.  *Id*.  Finally, Dr. Koester did not think that Lemon was malingering since he reported complaints of fatigue and pain "on a consistent basis over the past three years."  Tr. 324-25.

## **DISABILITY ANALYSIS**

In construing an initial disability determination, the Commissioner engages in a sequential process encompassing between one and five steps.  20 CFR §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If so, the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement.  20 CFR §§ 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  Absent a severe impairment, the claimant is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id.* If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1566, 416.966.

## ALJ'S FINDINGS

At step one, the ALJ concluded that while Lemon has engaged in substantial gainful activity since the onset of his alleged disability in 1991, he had no substantial gainful activity during all relevant periods and since August 2005. Tr. 10-11.

At step two, the ALJ determined that Lemon suffers from the severe impairments of degenerative disc disease and obesity. Tr. 11-12.

At step three, the ALJ concluded that Lemon does not have an impairment or combination of impairments that meets or equals any of the listed impairments. Tr.13. The ALJ decided that Lemon has the RFC to:

> [L]ift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to four hours in an eight hour workday, and sit up to six hours in an eight hour workday. The claimant should never climb ropes, ladders, or scaffolds, and can only occasionally climb stairs and ramps. The claimant can also occasionally stoop, kneel, crouch, and crawl. The claimant can balance frequently, and should not have concentrated exposure to hazards.

*Id*.

At step four, the ALJ found that Lemon is capable of performing the past relevant work of telemarketing salesman. Tr. 17. Accordingly, the ALJ concluded, without proceeding to step five, that Lemon was not disabled at any point through the date of the ALJ's decision on May 30, 2008. *Id.*

## **STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court must weigh the evidence that supports and detracts from the ALJ's

11 - FINDINGS AND RECOMMENDATION

conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Lingenfelter*, 504 F3d at 1035; *Batson*, 359 F3d at 1193.

## FINDINGS

The Commissioner concedes that the ALJ erred by: (1) failing to review treating physician Dr. Koester's medical records between July 2006 and November 2007; (2) improperly dismissing the lay witness testimony based on factually incorrect reasons and generalized assertions; and (3) mistakenly finding that Lemon worked as a lot attendant in discussing his past relevant work.[2] The parties disagree as to whether crediting the rejected testimony mandates a remand for further proceedings or for a payment of benefits.

The decision to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). The court's decision turns on the utility of further proceedings. *See Rodriguez v. Bowen*, 876 F2d 759, 763 (9th Cir 1989). A court should credit improperly rejected evidence and remand for an award of benefits where: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that

---

[2] Although the ALJ erroneously stated that Lemon had previously worked as a lot attendant, this was a harmless and likely typographical error. The ALJ did not rely on this past employment in finding Lemon disabled and instead found that Lemon could perform his past relevant work of telemarketing salesman.

12 - FINDINGS AND RECOMMENDATION

the ALJ would be required to find the claimant disabled were such evidence credited.  *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004) (citations omitted).  The Ninth Circuit has noted that the "three-part test really constitutes a two part inquiry, wherein the third prong is a subcategory of the second: if the ALJ were not "required to find the claimant disabled" upon crediting the evidence, then this certainly would constitute an "outstanding issue[ ] that must be resolved before a determination of disability [could] be made."  *Harman*, 211 F3d at 1178 n 7, citing *Smolen v. Chater*, 80 F3d 1273, 1292 (9th Cir 1996).

## I.  Treating Physician Testimony

The ALJ gave Dr. Koester's opinion "very little weight" in part because "there is no documentation in the record of [Lemon] seeing Dr. Koester between July 2006 and November 2007." Tr. 15.  The parties agree that the ALJ erred by failing to review the medical records between July 2006 and November 2007.  According to those medical records, Lemon saw Dr. Koester at least monthly during 2006 and 2007.

That error was critical since the ALJ also cited that same reason to reject Lemon's testimony as to his symptoms.  Even if Lemon's daily activities were as limited as he alleged, the ALJ found it "difficult to attribute that degree of limitation to [his] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." Tr. 14.  In that regard, the ALJ noted that Lemon's "medical record is quite sparse when considering the 17 year period of alleged disability" and that there were "significant periods of time for which there are no medical records, but there were office visits to Dr. Koester during which [Lemon] did not specify any complaint related to the alleged

impairments." *Id*. A review of all of Dr. Koester's treatment notes and observations repudiates that conclusion.

When "the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester v. Chater*, 81 F3d 821, 834 (9th Cir 1995), quoting *Hammock v. Bowen*, 879 F2d 498, 502 (9th Cir 1989). Although the parties agree that the ALJ gave one inadequate reason to discredit Dr. Koester's opinion, she also cited other reasons. The ALJ also found that Dr. Koester "relied significantly on [Lemon's] self reports of symptoms and limitation" which were not credible and "did no objective testing to confirm [Lemon's] allegations" which exceeded the MRI findings and Lemon's "periodic work activities." *Id*. Before crediting Dr. Koester's opinion as a matter of law, those reasons must be assessed.

The ALJ was wrong that Dr. Koester did no objective testing to confirm Lemon's account of his symptoms. Dr. Koester ordered x-rays and an MRI when he began treating Lemon in the summer of 2004. Tr. 282-84. Two years later, he took more spinal x-rays and referred Lemon to Dr. Balm for electrodiagnostic testing. Tr. 214-19, 223. Although Dr. Koester noted in late 2004 that Lemon's allegations exceeded the MRI findings, the later x-rays in June 2006 confirmed degenerative disc disease.

The ALJ also erred when concluding that Lemon's allegations exceeded his periodic work activities. Lemon did not work after the alleged onset date of August 31, 2005, and his most recent work experience was enabled only by the accommodations of frequently laying on a cot and taking approximately 20 days off a month. Tr. 12-14, 33, 139, 172.

Although the objective evidence is minimal, the only opinion evidence that contradicts Dr. Koester's opinion is that of non-treating DDS physicians. However, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F3d at 830 (citations omitted).

Because the ALJ failed to give any adequate reasons supported by the record to reject the opinion of Dr. Koester, his opinion should be credited as true.

## II. Lay Witness Testimony

In a third-party Function Report dated June 1, 2006, Lemon's wife reported that Lemon spends most of his time sleeping, occasionally trying to sit on the couch and visit with his children. Tr. 152. She noted that he needs help getting dressed, bathing, shaving, and to get up after using the toilet or getting off the couch, chairs, or seats. Tr. 153. She reported that he occasionally makes his own meals, but only sandwiches or food in a microwave because standing for long periods of time is painful for him. Tr. 154. Because of the pain in his legs, Lemon rarely goes to the store, and when he does, he rides on an electric scooter or wheelchair and needs help getting in and out of the car. Tr. 155. She reported that he is often depressed because he cannot do the things he used to do, often forgets his appointments, and cannot handle the family finances. Tr. 156. Finally, she reported that Lemon's condition had "deteriorated rapidly in the last 5 to 6 years," that his pain "has become so unbearable to him that he gets so stressed that he just cries at times," and that it is "hard to see how much mobility he has lost." Tr. 159.

At the hearing, Lemon's mother testified regarding the limitations she observed. She reported that he is not physically capable of working because he needs help bathing, grooming,

15 - FINDINGS AND RECOMMENDATION

and feeding himself. Tr. 53. She related that she had observed him "crying constantly," and that he "explode[s] temper-wise," leading her to opine that he is emotionally unstable. *Id*. Finally, she testified that she has to help him off the bathroom toilet because his legs have fallen asleep. *Id*.

Lay testimony of witnesses, including family members, about their own observations regarding the claimant's impairments must be considered by the ALJ. *Smolen*, 80 F3d at 1288. Testimony from lay witnesses who see the claimant on a regular basis is of particular value, because they can often ascertain whether the claimant is malingering or truly suffering. *Dodrill v. Shalala*, 12 F3d 915, 919 (9th Cir 1993). If an ALJ chooses to discount the statements of lay witnesses, the ALJ must give "germane reasons" for discrediting the testimony. *Lewis v. Apfel*, 236 F3d 503, 511 (9th Cir 2001). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F3d 1050, 1056 (9th Cir 2006).

The parties agree that the ALJ erred in dismissing the testimony of the lay witnesses as based on Lemon's discredited self-reports. To the contrary, the testimony of Lemon's wife and mother was based upon their own observations and interactions with him and, thus, was precisely the type of evidence an ALJ must take into account unless the ALJ gives germane reasons for disregarding it. *See Lewis*, 236 F3d at 511. Furthermore, their testimony is confirmed by Foote's independent observations in May 2006. Tr. 150.

This error was not harmless. By failing to properly account for the lay witness testimony of Lemon's wife and mother, the ALJ improperly disregarded much of the evidence offered in support of Lemon's claim. Consequently, the ALJ's RFC determination did not reflect a proper consideration of Lemon's limitations.

### III.  Remand for Benefits

The only remaining issue is whether it is clear from the record that, after crediting Dr. Koester's opinion and the lay witness testimony, the ALJ would have been required to find Lemon disabled.

Dr. Koester has been Lemon's primary treating physician since July 2004. Tr. 285. Many of Dr. Koester's treatment notes reflect his opinions and observations regarding Lemon's disability status and ability to sustain gainful employment. *See* Tr. 264-84. Virtually all of the treatment notes include observations regarding Lemon's ability to ambulate, and at nearly every appointment, Dr. Koester noted that, at a minimum, Lemon moved slowly. *See* Tr. 264, 268, 269, 273, 274, 278, 281, 284, 310-11, 318. At times, Lemon sat bent over in a chair, walked partially stooped over, with a limp, or used an ambulatory device. *See* Tr. 272, 274, 280, 310, 316. Between July 2006 and November 2007, Dr. Koester consistently observed that Lemon was in pain, was very limited in his activities, and used a walker and a wheelchair. Dr. Koester opined on November 21, 2007, after treating Lemon for over three years, that his disability was "total and permanent." Tr. 265. Dr. Koester affirmed this opinion on January 21, 2008, concluding that Lemon was not malingering because his complaints had been consistent over the previous three years that he had been treating him. Tr. 324-25. Dr. Koester's opinion and

observations regarding Lemon's disability remained constant throughout his years of treatment notes.

Dr. Koester's treatment notes make up the bulk of the medical record. However, Dr. Balm lends support to Dr. Koester's assessment of the limiting effect of Lemon's symptoms. After conducting a normal electrodiangostic study, he suspected that "long term pain management for palliative care is the most likely course of action" for Lemon's condition. Tr. 219.

Significantly, when presented a hypothetical limitation that incorporated the limitations found by Dr. Koester, the VE testified that such an individual would be unable to engage in competitive work. Tr. 64-65. If credited as true, the lay witness testimony offers additional support for both the medical opinion offered by Dr. Koester and the hypothetical posed to the VE with those limitations. The Ninth Circuit has remanded for payment of benefits when there was testimony from the VE that the limitations found by an improperly rejected medical opinion would render the claimant unable to engage in any work. *See Harman*, 211 F3d at 1180, citing *Varney v. Sec'y of Health & Human Svcs.*, 859 F2d 1396, 1400 (9th Cir 1988); *Smolen*, 80 F3d at 1291; *Reddick*, 157 F3d at 729; *Gallant v. Heckler*, 753 F2d 1450, 1456 (9th Cir 1984).

Once Dr. Koester's opinion and the lay witness testimony are credited as true, it is clear from the record that the ALJ would have been required to find Lemon disabled since no outstanding issues remain to be resolved. Thus, a remand for an immediate award of benefits is appropriate.

///

///

18 - FINDINGS AND RECOMMENDATION

///

## RECOMMENDATION

For the reasons discussed above, the Commissioner's Motion to Remand (docket #18) should be GRANTED in part and DENIED in part, and the Commissioner's decision should be REVERSED AND REMANDED pursuant to sentence four of 42 USC § 405(g) for the calculation and award of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due June, 14, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of May, 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge